EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Gloria A. Torres Román | 2016 TSPR 154<br><br>195 DPR _____ |

Número del Caso: CP-2014-14


Fecha: 28 de junio de 2016


Abogado de la querellada:

      Por derecho propio


Oficina de la Procuradora General:

      Lcda. Karla Pacheco Álvarez
      Subprocuradora General

      Lcda. Minnie H. Rodríguez López
      Procuradora General Auxiliar

Comisionada Especial:

      Hon. Crisanta González Seda



Materia: La suspensión será efectiva el 3 de agosto de 2016, fecha en que se le notificó por correo a la abogada de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re* | | |
| Gloria A. Torres Román | CP-2014-14 | |

*PER CURIAM*

San Juan, Puerto Rico, a 28 de junio de 2016

I

La Lcda. Gloria A. Torres Román fue admitida al ejercicio de la abogacía el 20 de enero de 1993 y al de la notaría el 27 de agosto de 1993.

El 23 de mayo de 2011, el Sr. Carlos Agosto Rodríguez presentó una queja contra la letrada de epígrafe. En ésta, adujo que la licenciada Torres Román autorizó una escritura de hipoteca defectuosa –la Escritura Núm. 3 de 16 de septiembre de 2010-, la cual no pudo ser debidamente inscrita en el Registro de la Propiedad. Esto, debido a falta de tracto sucesivo. El 8 de agosto de 2011, la licenciada Torres Román contestó la referida queja, negando, esencialmente, las contenciones formuladas por el señor Agosto Rodríguez y alegando haber sido inducida a error durante la otorgación de la escritura en cuestión.

Luego de los trámites de rigor, previa moción de la Oficina de la Procuradora General, este Tribunal emitió una resolución y refirió la queja que nos ocupa a la Oficina de Inspección de Notarías (ODIN) con tal que ésta hiciera las investigaciones correspondientes y preparara

un informe. Por tanto, el 21 de mayo de 2012, la ODIN rindió su informe, en el cual determinó que, en efecto, la licenciada Torres Román autorizó una escritura defectuosa. En consecuencia, la ODIN estimó que la licenciada Torres Román contravino el artículo 2 de la *Ley notarial de Puerto Rico* y, además, incurrió en conducta éticamente reprochable. El 7 de mayo de 2013, por su parte, la Oficina de la Procuradora General rindió su informe. En éste, fundamentalmente avaló la apreciación hecha por la ODIN.[1]

En consideración de lo anterior, el 25 de abril de 2014, este Tribunal le ordenó a la Oficina de la Procuradora General que procediera a presentar la querella correspondiente. Dicha oficina, pues, acatando la resolución emitida por este Tribunal, presentó una querella contra la licenciada Torres Román imputándole haber contravenido el artículo 2 de la *Ley notarial de Puerto Rico* y haber incurrido en conducta éticamente reprochable al amparo de los cánones 18, 35 y 38.

---

[1] Es preciso señalar que, el 28 de octubre de 2013, el director de la ODIN, Lcdo. Manuel E. Ávila de Jesús, compareció ante este Tribunal, mediante un escrito intitulado *Moción informativa.* En éste, indicó que la licenciada Torres Román —a través de una comunicación escrita con fecha del 15 de octubre de 2013— expresó su interés en ser dada de baja del ejercicio de la notaría. Esto, debido a la existencia de varias condiciones de salud, las cuales no fueron acreditadas en ese momento. Sin embargo, a modo de excepción, el licenciado Ávila de Jesús aceptó la entrega de la obra protocolar de la querellada, la cual, según sus tomos han sido aprobados, está depositada en el Archivo Notarial de San Juan.

El 15 de diciembre de 2014, la licenciada Torres Román compareció y acusó recibo tanto de la querella presentada en su contra, como del mandamiento para contestar la misma. Sin embargo, informó que sería sometida a una cirugía el 14 de septiembre de 2014 y que, luego, estaría fuera del País hasta principios de febrero del 2015 recibiendo tratamiento médico, en la Clínica Mayo. Por tanto, solicitó una prórroga de seis meses para contestar la querella en cuestión. En atención a dicha solicitud, este Tribunal le concedió a la querellada un término de 30 días para que presentara su contestación a la querella. La licenciada Torres Román, empero, no presentó ésta dentro del referido término.

El 25 de junio de 2015, este Tribunal designó a la Hon. Crisanta González Seda como Comisionada Especial, con tal que recibiera prueba sobre las presuntas faltas éticas de la licenciada Torres Román y rindiera el informe correspondiente. Nótese que, en ese momento, la querellada no había comparecido ni había solicitado una prórroga adicional para contestar su querella. Valga destacar que la licenciada Torres Román tampoco había presentado prueba sobre sus padecimientos de salud. Por tanto, el 13 de julio de 2015, la Comisionada Especial emitió una orden, en la cual pautó una vista y dispuso para que las partes elaboraran un informe de conferencia con antelación a vista, en o antes del 31 de agosto de 2015. Asimismo, la

referida orden pautó una conferencia con antelación a vista para el 1 de septiembre de 2015.

El 22 de julio de 2015, la licenciada Torres Román acusó recibo de la orden emitida por la Comisionada Especial a través de un correo electrónico dirigido a una funcionaria de la Secretaría de este Tribunal. Esto, no empece que en la orden en cuestión se le había indicado la dirección a la cual debía dirigir cualquier comunicación durante la pendencia del procedimiento disciplinario. En su mensaje, la querellada indicó que se encontraba en Rochester, Minnesota, recibiendo tratamiento médico y que tendría que someterse a siete intervenciones quirúrgicas. Por tanto, alegó que tuvo que mudarse a dicho estado y que, además, desconocía cuándo podría regresar a nuestra jurisdicción. De otra parte, señaló que había solicitado infructuosamente asistencia legal del Colegio de Abogados y Abogadas de Puerto Rico.

Posteriormente, el 23 de julio de 2015, la querellada compareció nuevamente mediante una moción, en la que comunicó que, en lo pertinente, y dado su tratamiento médico, tendría que permanecer en Minnesota por dos años. Asimismo, en dicha comparecencia, la querellada negó las alegaciones de la queja y dijo haber sido víctima de una estafa. En consideración de lo anterior, la licenciada Torres Román solicitó la suspensión del procedimiento disciplinario en su contra hasta tanto se encontrara en una situación de salud y económica propicia para poder

defenderse apropiadamente. Añadió, también, que justamente por su situación de salud no pudo refutar el informe rendido por la ODIN. Es preciso destacar que la querellada no presentó ninguna evidencia tendente a probar sus aseveraciones; en particular, la necesidad de someterse a siete intervenciones quirúrgicas y de permanecer en el estado de Minnesota durante un período de dos años.

El 3 de agosto de 2015, la Comisionada Especial emitió una orden, concediéndole a la licenciada Torres Román un período de diez días para que sometiera evidencia con tal de probar la veracidad de sus alegaciones. Por otro lado, en dicha orden se reiteró la fecha de la conferencia con antelación a vista, a saber, el 1 de septiembre de 2015. Asimismo, se le apercibió a la querellada que su incumplimiento con la orden en cuestión podría acarrear sanciones disciplinarias.

El 15 de agosto de 2015, la licenciada Torres Román envió otro mensaje por correo electrónico a personal de la Secretaría de este Tribunal, haciendo caso omiso, una vez más, a la directriz de la Comisionada Especial, quien había señalado un apartado postal a donde debía enviarse toda comunicación durante la tramitación del procedimiento disciplinario. En esta comunicación, la querellada indicó, entre otros particulares, que ya había enviado cierta prueba relacionada con su condición médica. Asimismo, señaló que no divulgaría sus récords médicos.

El 20 de agosto de 2015, la Comisionada Especial emitió una resolución en la cual le comunicó a la licenciada Torres Román que, luego de una búsqueda exhaustiva, no había encontrado ningún documento relacionado con su tratamiento médico y las presuntas siete intervenciones quirúrgicas a las que tendría que someterse. Tampoco había ninguna evidencia que probara que, en efecto, la querellada tendría que permanecer durante un período de dos años fuera del País. En cuanto a sus récords médicos, la Comisionada Especial señaló que era imperativo que la querellada presentara evidencia que justificara su incomparecencia, aun cuando estaba en todo su derecho de no divulgar información confidencial. Por último, se le apercibió nuevamente a la licenciada Torres Román que, de no comparecer a la conferencia con antelación a vista pautada para el 1 de septiembre de 2015 ni presentar la evidencia que le fue requerida, se solicitaría que este Tribunal impusiera las sanciones disciplinarias que estimara pertinentes. Ello, dado el reiterado incumplimiento de la letrada de epígrafe con las órdenes emitidas durante la pendencia del procedimiento disciplinario.

Así las cosas, el 1 de septiembre de 2015, se celebró la conferencia con antelación a vista. La licenciada Torres Román, sin embargo, no compareció. Durante la celebración de dicha conferencia, además, trascendió que la querellada no le había notificado ningún escrito a la

Procuradora General. Así, la Comisionada Especial emitió una orden para mostrar causa por la cual no debía referir el asunto a la consideración de este Tribunal con tal que se le impusieran a la licenciada Torres Román las sanciones correspondientes. Asimismo, pautó la continuación de la conferencia con antelación a vista para el 22 de septiembre de 2015, con tal de darle oportunidad a la querellada de comparecer. Tanto la orden como la minuta de la conferencia le fueron notificadas a la licenciada Torres Román por correo electrónico y por correo ordinario, a la dirección provista por ésta.[2]

El 8 de septiembre de 2015, se recibieron dos escritos en la Secretaría de este Tribunal, a saber, una carta y una moción. En éstos, esencialmente, la querellada reitera que ha informado su condición de salud y solicita que se posponga el procedimiento disciplinario en su contra hasta tanto esté en mejor posición para contestar la querella. Asimismo, indicó que envió evidencia de que se encontraba recibiendo tratamiento médico en la Clínica Mayo, debido a serios problemas de salud. Valga señalar que la licenciada Torres Román meramente se limitó a someter una copia de un brazalete de hospital con fecha del 23 de agosto de 2015. De otra parte, negó de modo general las alegaciones de la querella y adujo haber sido víctima de una estafa.

---

[2] Nótese, empero, que la dirección provista por la licenciada Torres Román no es la misma que la que consta en el Registro Único de Abogadas y Abogados.

El 11 de septiembre de 2015, la querellada presentó varios documentos. En primera lugar, presentó una carta de la Clínica Mayo con fecha del 24 de julio de 2015, mediante la cual se confirmaba una cita médica. Asimismo, presentó un itinerario de citas médicas, entre el 31 de agosto de 2015 y el 3 de septiembre de 2015. Es menester señalar que, según se desprende de dicho itinerario, no había ninguna cita pautada para el 1 de septiembre de 2015 ni para el 22 de septiembre de 2015. Nótese, también, que de los documentos sometidos por la querellada surge que las citas médicas en cuestión fueron notificadas con posterioridad al 22 de julio de 2015, fecha en que la licenciada Torres Román acusó recibo de la notificación de la conferencia con antelación a vista. La licenciada Torres Román nunca utilizó dichas citas médicas como justificación para solicitar que se pospusiera la conferencia en cuestión.

El 22 de septiembre de 2015, se celebró la continuación de la conferencia con antelación a vista. La licenciada Torres Román no compareció. Por otra parte, en lo pertinente, la Procuradora General solicitó que, sin trámite ulterior, se sometiera la conducta de la querellada a la consideración de este Tribunal. Ello, por entender que el reiterado incumplimiento de la licenciada Torres Román con las órdenes y resoluciones emitidas durante la pendencia del proceso disciplinario constituye una falta ética independiente de aquellas que le fueron

imputadas en la querella. Es decir, según alegó la Procuradora General, la conducta desplegada por la querellada vulneró las normas éticas que encarnan los cánones 9 y 12 del Código de Ética Profesional. De otro lado, también trajo ante la consideración de la Comisionada Especial el hecho de que la licenciada Torres Román no había actualizado su información personal en el Registro Único de Abogadas y Abogados (RÚA), tal y como requiere la Regla 9(j) del reglamento de este Tribunal.

Así, la Comisionada Especial acogió la recomendación de la Procuradora General y procedió a suspender el procedimiento disciplinario en curso. Por tanto, el 13 de octubre de 2015, presentó un *Informe especial*, en el cual detalló las incidencias acaecidas hasta entonces y recomendó que este Tribunal impusiera las sanciones que estimara pertinentes. La querellada, por su parte, respondió al informe en cuestión y, en esencia, repitió los argumentos esgrimidos durante el resto del proceso disciplinario en su contra.

Habiendo expuesto las circunstancias fácticas indispensables, procede auscultar las normas éticas pertinentes.

II

A

En primer lugar, el deber de respeto consagrado en el canon 9 del Código de Ética Profesional condiciona la totalidad de la conducta de un abogado en sus tratos no

sólo con los tribunales del País, sino también con aquellas entidades que asisten a éstos en el descargo de su delicada tarea, a saber, impartir justicia.

Así, en lo pertinente, el texto claro del canon 9 dispone que "[e]l abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto". Cód. Ética Prof. C. 9, 4 L.P.R.A. Ap. IX, C. 9. *In re Fontanez Fontanez*, 181 D.P.R. 407, 416 (2011). En consecuencia, los abogados están indefectiblemente obligados a cumplir toda orden emitida por un tribunal. *In re Dávila Toro*, 179 D.P.R. 833, 840 (2010). Ello, además, adquiere mayor importancia y relevancia durante la tramitación de un procedimiento disciplinario, dado los intereses públicos que informan éste. Véase, por ejemplo, *In re Pestaña Segovia*, 192 D.P.R. 485, 493 (2015). Nótese, también, que, según ha dicho este Tribunal, "los abogados tienen la obligación de responder diligentemente a nuestras órdenes, independientemente de los méritos de la queja presentada en su contra". *In re Toro Soto*, 181 D.P.R. 654, 660 (2011).

Asimismo, la obligación de respeto y diligencia que subyace el canon 9 se extiende a los requerimientos emitidos por la Oficina de la Procuradora General, la ODIN y los Comisionados Especiales, en tanto éstos son dependencias que, por delegación expresa, asisten a este Tribunal en el ejercicio de su poder inherente para regular la profesión legal. Véase, por ejemplo, *id.; In re*

*García Ortiz*, 187 D.P.R. 507, 524 (2012). Por consiguiente, el reiterado incumplimiento por parte de los abogados con los deberes encarnados en el canon 9 es razón suficiente para suspenderlos inmediata e indefinidamente del ejercicio de la abogacía y la notaría. Véase *In re Borges Lebrón*, 179 D.P.R. 1037 (2010); *In re López de Victoria Brás*, 178 D.P.R. 888 (2010); *In re Escalona Colón*, 149 D.P.R. 900 (1999); *In re Reyes, Rovira*, 139 D.P.R. 42 (1995).

B

De otro lado, y ciñéndonos a las imputaciones éticas formuladas contra la licenciada Torres Román, conviene recordar que el canon 12 del Código de Ética Profesional "requiere que los abogados presten atención minuciosa, sean diligentes y cumplan con las órdenes del tribunal, en particular cuando se trata de procedimientos relacionados a la conducta profesional [de éstos]". *In re García Ortiz*, 187 D.P.R. en la pág. 517. Véase 4 L.P.R.A. Ap. IX, C. 12; *In re Ruiz Hernández*, 177 D.P.R. 963 (2010); *In re Cuevas Velázquez*, 174 D.P.R. 433 (2008); *In re Ron Menéndez*, 149 D.P.R. 105 (1999).

De manera análoga a los deberes impuestos en virtud del canon 9, la aplicación del canon 12 no está limitada a las órdenes emitidas propiamente por este Tribunal, sino que también regula la conducta que los abogados deben observar con los requerimientos hechos por las diversas entidades que asisten a este Tribunal en el descargo de

sus responsabilidades. Véase *In re Massanet Rodríguez*, 188 D.P.R. 116, 125 (2013); *In re Lasalle Pérez*, 153 D.P.R. 368 (2001). Dada su enorme pertinencia para el caso que nos ocupa, es menester señalar que este Tribunal ha sido enfático al señalar que "un abogado actúa en contravención al Canon 12 si no responde a las resoluciones del Tribunal Supremo . . .". *In re Massanet Rodríguez*, 188 D.P.R. en la pág. 125-26. Véase, además, *In re Rodríguez Bigas*, 172 D.P.R. 345 (2007).

C

Por último, la regla 9(j) de este Tribunal dispone de manera taxativa el deber de todos los abogados en nuestra jurisdicción de mantener actualizada su información personal en el Registro Único de Abogados y Abogadas (RÚA). 4 L.P.R.A. Ap. XXI-B, R. 9(j). Por tanto, cualquier cambio en su dirección postal o física ha de ser oportunamente informado, con tal que así conste en el RÚA. Véase, en general, *In re Toro Soto*, 181 D.P.R. 654; *In re Grau Collazo*, 185 D.P.R. 938, 944 (2012).

"Cabe mencionar que nuestro énfasis en la importancia de que todo abogado mantenga al Tribunal al tanto de sus direcciones y de su información personal no es novel [sic]. En reiteradas ocasiones hemos señalado la gravedad que conlleva no notificar de manera inmediata a la Secretaría de este Tribunal de cualquier cambio ocurrido". *In re Camacho Hernández*, 188 D.P.R. 739, 743 (2013). De hecho, este Tribunal ha suspendido un sinnúmero de

abogados por el mero hecho de no mantener actualizada su información en el RÚA. *In re Arroyo Rosado*, 191 D.P.R. 242, 245 (2014). Véase, además, *In re Rivera Trani*, 188 D.P.R. 454 (2013).

III

En el caso ante nuestra consideración, no cabe duda que la licenciada Torres Román hizo caso omiso no sólo a las resoluciones emitidas por este Tribunal, sino también a las órdenes y los requerimientos emitidos por la Oficina de la Procuradora General y la Comisionada Especial. Con su proceder, pues, obstaculizó y dilató injustificadamente el proceso disciplinario instado en su contra.

En primer lugar, nótese que, aun cuando la licenciada Torres Román adujo que sus padecimientos médicos le impedían comparecer y contestar la querella, ésta nunca acreditó su condición de salud. La confidencialidad de sus récords médicos, por otra parte, no es una carta blanca para justificar el obstinado incumplimiento de la licenciada Torres Román con los diversos requerimientos que le fueron hechos durante la pendencia del procedimiento disciplinario en su contra.

Bien pudo la querellada procurar otro tipo de evidencia –como certificados médicos, por ejemplo-, que pusiera a este Tribunal en posición de poder aquilatar debidamente los presuntos padecimientos de ésta. Ese no fue el caso. Más bien, la licenciada Torres Román insistió en que diéramos como buenas las alegaciones presentadas en

sus comparecencias y decretáramos, sin más, la suspensión indefinida del procedimiento disciplinario. Al actuar de esta forma, la licenciada contravino flagrantemente los deberes éticos encarnados en los cánones 9 y 12. Téngase en cuenta, además, que este Tribunal ha dispuesto, en el pasado, que los padecimientos de salud de un abogado no lo excusan de cumplir con los deberes éticos que informan el ejercicio de la abogacía en nuestra jurisdicción. *In re Massanet Rodríguez*, 188 D.P.R. en la pág. 128 ("[E]l hecho de que el estado de salud [de un abogado] sea delicado, no excusa el incumplimiento con las obligaciones impuestas a todo abogado que ejerce la profesión".) (citas omitidas). Véase, además, *In re Grau Collazo*, 185 D.P.R. en la pág. 945.

De otra parte, es preciso destacar que, durante la tramitación del procedimiento disciplinario que nos ocupa, la licenciada Torres Román, a través de sus propias manifestaciones, dejó claro que no había actualizado su información personal en el RÚA. Al actuar de este modo, contravino la Regla 9(j) de este Tribunal, lo que, de suyo, es fundamento suficiente para imponer severas medidas disciplinarias.

Por tanto, en consideración de lo anterior, procede suspender inmediata e indefinidamente a la licenciada Torres Román del ejercicio de la abogacía y la notaría.

IV

En vista de lo anterior, se suspende inmediata e indefinidamente a la licenciada Torres Román del ejercicio de la abogacía y la notaría. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolverles cualquier honorario recibido por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Además, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días a partir de la notificación de esta opinión *Per Curiam* y sentencia.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Gloria A. Torres Román

**Núm.** CP-2014-0014

SENTENCIA

San Juan, Puerto Rico 28 de junio de 2016

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se suspende inmediata e indefinidamente a la licenciada Torres Román del ejercicio de la abogacía y la notaría. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolverles cualquier honorario recibido por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Además, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días a partir de la notificación de esta opinión *Per Curiam* y sentencia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo